## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

MICHAEL J. POLCARE, on behalf of
himself and all others similarly situated,

      Plaintiff,

      v.

PHH MORTGAGE CORPORATION d/b/a
PHH MORTGAGE SERVICES,

      Defendant.

Case No.:   1:24-cv-639 (LEK/DJS)

**CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED**

Plaintiff Michael J. Polcare ("Polcare" or "Plaintiff"), on behalf of himself and all others similarly situated, files this class action complaint against PHH Mortgage Services ("PHH" or "Defendant") and states:

## NATURE OF THE ACTION

1.      This is a consumer protection action brought by Plaintiff and others similarly situated to obtain redress from PHH's systematic use of unlawful and unfair debt collection practices to collect upon residential consumer mortgage loans.

2.      Specifically, during the relevant time period, PHH sent borrowers form letters alleging that the borrowers are in default of their mortgages and that the failure to immediately make a ***full and complete*** payment of all arrearages will result in acceleration of their loan (hereinafter referred to as the "Final Letter"). However, the false ultimatum contained in the Final Letter contradicts PHH's actual policies regarding acceleration and foreclosure.

3.      The Final Letter sent by PHH to the Plaintiff and others similarly situated is a

false and misleading threat of acceleration and foreclosure designed to intimidate borrowers into making payments to PHH that are beyond their means and beyond what is necessary to avoid acceleration and save their homes from foreclosure.

4.     This action is brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and N.Y. Gen. Bus. Law ("GBL") § 349 *et seq.*

5.     This class action is filed pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all borrowers to whom PHH has or will send one or more Final Letters pursuant to PHH's standardized policies and procedures during the applicable statute of limitations period in violation of state and federal law as further set forth herein.

## JURISIDICTION AND VENUE

6.     The foregoing allegations are hereby incorporated by reference as if fully set forth herein.

7.     This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 in that this action arises under, *inter alia*, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

8.     Jurisdiction is proper in this Court under 28 U.S.C. § 1332(d)(2) because these claims form part of a class action in which the amount in controversy exceeds the sum of $5,000,000.

9.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 in that the state law allegations contained herein are so related to the claims asserted under 15 U.S.C. § 1692 *et seq.* over which the Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10.     Divisional assignment, and Venue, is proper in this District under 28 U.S.C. §§

1391(b) and (c) because a substantial part of the events giving rise to the claims asserted herein occurred within this District.

## PARTIES

11.    Plaintiff is a citizen and resident of Saratoga County, New York.

12.    PHH is a corporation organized and existing under and by virtue of the laws of the State of New Jersey, with a principal place of business in Mount Laurel, New Jersey.

13.    PHH is regularly engaged in the business of collecting debt in the State of New York.

14.    PHH frequently acts as a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), including with regard to Plaintiff's mortgage loan because, upon information and belief, PHH obtained the servicing rights while in a state of default.

15.    PHH's employees, affiliates, directors, agents, and attorneys act under the direction and supervision of PHH and, therefore, PHH is responsible and/or vicariously liable for the actions of its employees, affiliates, directors, agents, and attorneys under, *inter alia*, the theory of *respondeat superior*.

## FACTUAL ALLEGATIONS

16.    Plaintiff is an owner and resident of a home located in Saratoga Springs, NY ("Home").

17.    Upon information and belief, PHH services mortgages for residential housing loans owned, backed, or controlled by the Federal National Mortgage Association ("Fannie Mae"), including the mortgage on Plaintiff's homes and the homes of putative class members.

18.    PHH is a servicer of mortgages for residential housing loans. Upon information and belief, PHH earns money based upon a percentage of the funds that it collects from

consumers' mortgage payments as well as through the assessment of late fees and other penalties.

19.    Upon information and belief, many of the mortgage loans that PHH services, including Plaintiff and putative class members, are delinquent when PHH acquires the servicing rights. Other loans become delinquent during PHH's servicing of the loans.

20.    Upon information and belief, as a mortgage servicer, PHH acquires the servicing rights to a portfolio of loans from Fannie Mae. As part of this process, Fannie Mae and PHH enter into a subservicing agreement, a standardized agreement that governs all Fannie Mae backed mortgages, including Plaintiff's and putative class members.

21.    As a Fannie Mae mortgage servicer, PHH is obligated to follow certain standardized procedures that comply both with the subservicing agreement and with the Real Estate Settlement Procedures Act. This includes the specific requirement that PHH can only refer a mortgage loan to foreclosure once it reaches at least 120 days delinquency. *See e.g.,* 12 C.F.R. § 1024.41(f)(1)(i).

22.    Upon information and belief, it is only when PHH initiates the foreclosure process (at no date earlier than at least 120 days delinquency) that the specific mortgage loan is triggered for acceleration. As such, PHH does not accelerate a mortgage loan until it is least 120 days delinquent.

23.    However, when loans for its customers become more than 45 days delinquent, PHH sends a letter that it refers to as a "Final Letter" to coerce and intimidate the borrower into paying the entire default amount of the loan.

24.    An exemplar Final Letter sent to the Plaintiff that is materially similar to the Final Letters sent to putative class members is attached hereto as **Exhibit A.**

25.    The Final Letter specifically states: "to cure the default, payment for the entire

total amount past due, plus any amount(s) becoming due in the interim, *must* be received on or before [Date (the "Expiration Date" a date 35 days from the date of the Notice of Default)]." (emphasis added).

26.    The Final Letter further states: "[p]lease be aware, after acceleration of the debt, there may be expenses and attorney's fees and costs incurred by us to enforce the terms of the Security Instrument or mortgage agreement, in addition to the overdue amount on the mortgage account. … Payments received after acceleration that are less than the amount required to reinstate the mortgage may be returned, and may not stop any foreclosure proceedings already begun on the Property."

27.    The Final Letter also states: "[f]ailure to cure the default on or before the date specified in the notice [(the Expiration Date)] *may require immediate payment in full, and lender or another person may acquire the Property by means of foreclosure and sale*. Upon acceleration, the total obligation will be immediately due and payable without further demand."

28.    PHH utilizes the Final Letters to make false threats to accelerate borrowers' loans.

29.    The Final Letters create a false sense of urgency by threatening to accelerate the entire indebtedness of a consumer's loan if you have not "cure[d] the default on or before the date specified in the notice [(the Expiration Date)]…" when, upon information and belief, a borrower need only keep their loans less than 120 days past due to avoid acceleration and foreclosure.

30.    If a borrower fails to meet the deadline outlined in the Final Letters, nothing happens at all because PHH cannot refer to foreclosure and does not accelerate until the mortgage loan is more than 120 days delinquent.

31.    Upon information and belief, PHH will not accelerate borrowers' loans and

proceed to foreclosure even if the borrower fails to make a payment equal to the default amount listed in the Final Letter *and* fails to make any payments that come due during the notice period.

32.    Although the Final Letter requires recipients to make a full payment of the default amount by the Expiration Date to avoid acceleration, PHH maintains a practice of not accelerating loans so long as the loan is fewer than 120 days delinquent.

33.    The Final Letters misrepresent the conditions under which PHH intends to accelerate loans and materially deceives consumers into believing their loans *may* be accelerated if they fail to fully cure their default prior to the Expiration Date, a date 35 days from the date of the Final Letter.

34.    The Final Letters instruct borrowers that, to avoid acceleration, they must pay a larger share of the amount owed that PHH actually requires.

35.    Put simply, PHH does not accelerate loans in the manner threatened by its Final Letter in the usual course of its business – PHH does not accelerate loans under the circumstances outlined in the Final Letter.

36.    The Final Letters cause borrowers, including the Plaintiff and putative Class members, to believe that they are at risk of acceleration and foreclosure if all arrearages to PHH are not paid within the time period identified in the Letter.

37.    The Final Letters cause borrowers to believe that they will lose their homes if they do not become current on their loan within the time period identified in the Letter.

38.    The Final Letters misrepresent PHH's intentions and present consumers with a false ultimatum that they satisfy all arrearages within the false deadline identified in the Final Letter, or face acceleration and ultimately foreclosure.

39.    The Final Letters are materially misleading in that they threaten consumers,

including Plaintiff and putative Class members, with acceleration and foreclosure when PHH has neither the present intent, nor the present ability, to undertake such actions.

40.     The empty threats of acceleration and foreclosure contained within the Final Letter are clearly designed to scare and intimidate individuals into paying delinquent amounts.

41.     The empty threats of acceleration and foreclosure contained within the Final Letter have the potential of causing individuals, including Plaintiff and putative Class members, to send additional money to PHH that, absent the false and misleading statements, they could have utilized on other necessary expenditures, including food and utility payments.

42.     The empty threats of acceleration and foreclosure make it impossible for a consumer to make a rational decision in response to the Final Letter because it threatens immediate, irreversible consequences.

43.     The empty threats of acceleration and foreclosure are designed to scare consumers into making payments they otherwise may not.

44.     PHH understands the frightening and unnerving nature of the misrepresentations utilized in its Final Letters.

45.     Upon information and belief, the Final Letters were purposefully crafted in such a way to frighten and intimidate consumers into paying money to PHH.

46.     Plaintiff and putative Class members have received numerous Final Letters substantially identical to **Exhibit A.**

47.     Upon information and belief, each Class member has received one or more Final Letters.

48.     Each Final Letter constitutes a separate violation of the FDCPA and GBL § 349 in that, *inter alia*, each Final Letter threatens to take action not taken in the ordinary course of

business nor intended to be taken in the particular instance in which it was threatened.

49.     As a result of the forgoing, Plaintiff and putative Class members have experienced anxiety, stress, anger, frustration, and mental anguish which is fairly traceable to their receipt of Final Letters containing the false ultimatums which, *inter alia*, caused informational harms, violated substantive rights to be free from unfair and abusive debt collection communications, and misled Plaintiff and putative Class members with regard to the amount of money that had to be paid and when it needed to be paid to save their homes from acceleration and/or foreclosure.

## CLASS ALLEGATIONS

50.     The foregoing allegations are hereby incorporated by reference as if fully set forth herein.

51.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action individually, and on behalf of the following Classes tentatively defined as follows:

> FDCPA Class: All residential mortgagors whose mortgage servicing was transferred to PHH while in default and was not owned by PHH and to whom PHH sent a letter substantially similar or materially identical to the letter attached as Exhibit A warning of acceleration of the home loan and/or commencement of foreclosure proceedings upon less than full payment of the "amount due" or "default amount," within the applicable statute of limitations period (the "FDCPA Class").

> New York Class: All residential mortgagors of property in New York whose mortgage servicing was transferred to PHH while in default and was not owned by PHH and to whom PHH sent a letter substantially similar or materially identical to the letter attached as Exhibit A warning of acceleration of the home loan and/or commencement of foreclosure proceedings upon less than full payment of the "amount due" or "default amount," within the applicable statute of limitations period (the "NY Class").

52.     The individuals protected by the Classes are limited by the applicable statute of limitations prior to the filing of this Complaint, through the date of final resolution of this matter.

53.     Excluded from the Classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) PHH and any entity in which PHH has a controlling

interest in PHH and its legal representatives, successors and assigns; and (c) all persons and entities who properly execute and file a timely request for exclusion from the Class.

54.    *Numerosity*: Plaintiff is unable to provide a specific number of members in the Classes because that information is solely in the possession of PHH. However, the exact number of Class members, including the names and addresses of all Class members, will be easily ascertained through a review of PHH's business records. Upon information and belief, each Class contains at least a thousand consumers and likely exceeds several thousand consumers and is therefore so numerous that joinder of all members would be impracticable.

55.    *Commonality*: Common questions of law and fact predominate over any individual issues that may be presented, because PHH has a pattern, practice and policy of communicating with all borrowers in a materially identical manner. PHH, in seeking to collect the mortgage loan debt of Plaintiff and the putative Classes, sent materially identical letters to Plaintiff and putative Class members. Each and every member of the proposed Classes is subject to PHH's policies and procedures.

56.    *Typicality*: The claims of Plaintiff are typical of the claims of the Classes and all are based on the same facts and legal theories, as all such claims arise out of PHH's conduct.

57.    *Adequate Representation:* Plaintiff is an adequate representative of the Classes in that he is a member and does not have antagonistic or conflicting claims with other Class members.

58.    Plaintiff has also retained counsel experienced in the prosecution of complex class actions.

59.    Neither Plaintiff nor his counsel have any interests that might cause them not to vigorously pursue this action.

60.    Plaintiff is aware of his responsibilities as class representative and has accepted such responsibilities.

61.    *Predominance and Superiority*: The Classes are appropriate for certification because questions of law and fact common to the members of the Classes predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Classes is impracticable. Should individual Class members be required to bring separate actions, this Court or courts in other jurisdictions would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

62.    Further, PHH has acted and refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate final injunctive and declaratory relief with respect to the Class as a whole.

### FIRST CAUSE OF ACTION
**(Violations of the Fair Debt Collection Practices Act,
15 U.S.C. § 1692, *et seq.*)**

63.    The foregoing allegations are hereby incorporated by reference as if fully set forth herein.

64.    PHH is a "debt collector," as defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

65.    PHH acted as a "debt collector" in servicing the mortgage loans of Plaintiff and the putative Class members because their loans were in default at the time PHH obtained the

servicing rights.

66.    PHH's correspondence to Plaintiff and Class members set forth herein as **<u>Exhibit</u> <u>A</u>**, states "This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose."

67.    Plaintiff and members of the Classes are "consumers," as defined by the FDCPA, 15 U.S.C. § 1692(a)(3), since they are natural persons allegedly obligated to pay a consumer debt.

68.    At all material times, Plaintiff's debt and the debts of the Class members were "debt," as defined by the FDCPA, 15 U.S.C. § 1692(a)(5).

69.    Dunning letters such as the Final Letter attached as **Exhibit A** hereto are to be evaluated by the objective "least sophisticated consumer" standard.

70.    FDCPA 15 U.S.C. § 1692(e) states in part:

A debt collector may not use false, deceptive, or misleading representations or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
. . .
(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken.
. . .
(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

71.    PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it used false representations and deceptive means to collect or attempt to collect the Debt; threatened action it did not intend to take; and/or threatened to take action that it could not legally take.

72.    PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it utilized false threats and misleading representations regarding the amounts that consumers must

pay, and when they must pay it, in order to continue to own their homes.

73.    PHH has attempted to collect debt in violation of 15 U.S.C. § 1692e, in that it used false representations and deceptive means to collect or attempt to collect the Debt; threatened action it did not intend to take; and threatened to take action that it could not legally take.

74.    PHH has attempted to collect debt in violation of 15 U.S.C. § 1692e, in that it utilized false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, in order to continue to own their homes.

75.    PHH has attempted to collect debt in violation of 15 U.S.C. § 1692e in that it falsely represented its intention to accelerate and foreclose on the homes of Plaintiff and putative Class members in an effort to induce the payment of additional funds.

76.    PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it misrepresented its intentions and presented Plaintiff and putative Class members with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the Final Letters, or face acceleration and ultimately foreclosure.

77.    PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it has threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures under the terms threatened in its Final Letter.

78.    PHH's violations of 15 U.S.C. § 1692(e) were material because the Final Letter misled consumers about information that would have been important to them in responding to debt collection attempts, created a substantial risk of causing consumers to make decisions against their own interests in managing their finances, and increased their fear and anxiety regarding the risk of immediate acceleration and foreclosure.

79.    Under 15 U.S.C. § 1692e, Plaintiff and the putative Class members have a statutory right to be free from abusive debt collection practices and suffered concrete and particularized injury when PHH violated their substantive rights under the FDCPA, including, *inter alia*, the right to be free from false, misleading, and/or deceptive communications regarding Plaintiff and the putative Class members' respective debts.

80.    Moreover, Congress has expressly determined that PHH's violations are material by specifically designating that threats to take actions that the debt collector does not intend to take are an unfair collection practice and a violation of the FDCPA.

81.    PHH has attempted to collect debt in violation of 15 U.S.C. § 1692(e) by using false representations and deceptive means, including empty threats of acceleration and foreclosure.

82.    FDCPA section 1692(f) states in pertinent part:

Aa debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(6) …threatening to take any nonjudicial action to effect dispossession … if (A) there is no present intention to take possession of the property….

83.    PHH has attempted to collect debt in violation of 15 U.S.C. § 1692f in that it unfairly utilized false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, in order to continue to own their homes.

84.    PHH has attempted to collect debt in violation of 15 U.S.C. § 1692f in that it falsely represented its intention that "to cure the default, payment for the entire total amount past due, plus any amount(s) becoming due in the interim, *must* be received on or before [Date (the "Expiration Date" a date 35 days from the date of the Notice of Default)]." (emphasis added).

85.    PHH has attempted to collect debt in violation of 15 U.S.C. § 1692f in that it

falsely represented its intention that the "[f]ailure to cure the default on or before the date specified in the notice [(the Expiration Date)] *may require immediate payment in full, and lender or another person may acquire the"* homes of Plaintiff and putative Class members "*by means of foreclosure and sale*" in an effort to induce the payment of additional funds.

86.    PHH has attempted to collect debt in violation of 15 U.S.C. § 1692f, in that it misrepresented its intentions and presented Plaintiff and putative Class members with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the Final Letters, or face acceleration of all outstanding amounts under the Note immediately due and payable.

87.    PHH has attempted to collect debt in violation of 15 U.S.C. § 1692f, in that it has threatened to take action, including acceleration of all outstanding amounts under the Note, when it had no intention of taking such measures.

88.    PHH has attempted to collect debt in violation of 15 U.S.C. § 1692f by using unfair and unconscionable means, including empty threats of acceleration of the maturity date of the Note and to declare all outstanding amounts under the Note immediately due and payable.

89.    As a result of PHH's unlawful attempts to collect debt, Plaintiff and putative Class Members suffered injury and are entitled to actual and statutory damages, as well as their reasonable attorneys' fees.

## <u>SECOND CAUSE OF ACTION</u>
**(Violations of New York General Business Law § 349 *et seq*.)**

90.    The foregoing allegations are hereby incorporated by reference as if fully set forth herein.

91.    GBL § 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service".

92.    "Any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, and action to recover his actual damages or fifty dollars, whichever is greater, or both." GBL § 349(h).

93.    PHH engaged in consumer-oriented conduct because the Final Letters are directed at consumers and because they have a broader impact on consumers at large.

94.    As set forth above, PHH's Final Letters are deceptive as they are likely to mislead a reasonable consumer acting reasonably under the circumstances.

95.    PHH's Final Letters are materially misleading in violation of GBL § 349 in that it falsely represented that "to cure the default, payment for the entire total amount past due, plus any amount(s) becoming due in the interim, *must* be received on or before [Date (the "Expiration Date" a date 35 days from the date of the Notice of Default)]." (emphasis added).

96.    PHH's Final Letters are materially misleading in violation of GBL § 349 in that it falsely represented its intention that the "[f]ailure to cure the default on or before the date specified in the notice [(the Expiration Date)] *may require immediate payment in full, and lender or another person may acquire the"* homes of Plaintiff and putative Class members "*by means of foreclosure and sale*" in an effort to induce the payment of additional funds.

97.    PHH's Final Letters use false representations and deceptive means to collect or attempt to collect the Debt and are thus materially misleading under GBL §349 because PHH:

   a.   threatened action it did not intend to take; and/or threatened to take action that it could not legally take;

   b.   utilized false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, in order to continue to own their homes;

c.  falsely represented its intention to accelerate and foreclose on the homes of Plaintiff and putative Class members in an effort to induce the payment of additional funds;

d.  misrepresented its intentions and presented Plaintiff and putative Class members with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the Final Letters, or face acceleration and ultimately foreclosure;

e.  threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures under the terms threatened in its Final Letter;

f.  misled consumers about information that would have been important to them in responding to debt collection attempts, created a substantial risk of causing consumers to make decisions against their own interests in managing their finances, and increased their fear and anxiety regarding the risk of immediate acceleration and foreclosure.

98.  PHH's conduct evinces a pattern of consumer deception.

99.  Defendant committed the above-described acts willfully and/or knowingly.

100.  As a result of the foregoing, Plaintiff and the putative Class members suffered compensable harm and are entitled to actual and statutory damages, treble damages, injunctive relief, as well as their reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**(Negligent Misrepresentation)**

101.  The foregoing allegations are hereby incorporated by reference as if fully set forth herein.

16

102.    In the Final Letters, PHH made representations to Plaintiff, and similarly situated Class members, as set forth in this complaint.

103.    Those representations were false.

104.    When PHH made the representations, it knew they were untrue or it had a reckless disregard for whether they were true, or it should have known they were untrue.

105.    PHH knew that Plaintiff, and similarly situated Class members, were relying on the representations.

106.    In reliance upon the representations, Plaintiff and similarly situated Class members used their funds, or borrowed funds, to pay the entire balance when they could have made a partial payment and used their funds on other necessary living expenses.

107.    As a direct and proximate result of PHH's negligent misrepresentations, Plaintiff and Class members have been damaged and lost money as set forth in this complaint.

108.    As a direct and proximate result of the foregoing, Plaintiff and the Class members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, including punitive damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and all others similarly situated pray the Court for judgment as set forth below:

1.    Certifying this action as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as class representative, and appointing the undersigned

as Class counsel;

2.      Declaring that PHH has violated the FDCPA and/or GBL § 349 as set forth above, and awarding Plaintiff and the putative Class members compensatory and statutory damages;

3.      Enjoining further violations of these statutes and law by PHH and its agents and employees;

4.      Awarding Plaintiff and the Classes damages for all causes of action, including statutory damages;

5.      Awarding Plaintiff and the Classes their reasonable attorneys' fees and costs;

6.      Ordering that the costs of this action be taxed to PHH; and,

7.      Providing such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 8th day of May, 2024.

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**

s/ *Randi A. Kassan*
Randi A. Kassan
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
100 Garden City Plaza, Suite 500
Garden City, New York 11530
(516) 741-5600
rkassan@milberg.com


Scott C. Harris (*pro hac vice* forthcoming)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Email: sharris@milberg.com

Edward H. Maginnis (*pro hac vice* forthcoming)
N.C. State Bar No. 39317
**MAGINNIS LAW, PLLC**
4801 Glenwood Avenue, Suite 310
Raleigh, North Carolina 27612
Telephone: 919-526-0450
Fax: 919-882-8763
emaginnis@maginnislaw.com